UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-20608-CIV-LENARD/GOODMAN

**ARWIN NICOLAS ZAPATA CARRERO,**

　　Plaintiff,

**v.**

**SANABI INVESTMENTS, LLC d/b/a
OSCAR'S MOVING & STORAGE,
SAADY BIJANI a/k/a SANDY BIJANI,
and HANIN PRIETO,**

　　Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 135)

**THIS CAUSE** is before the Court on Plaintiff Arwin Nicolas Zapata Carrero's Motion for Partial Summary Judgment, filed January 11, 2019. ("Motion," D.E. 135.) Defendant Hanin Prieto,[1] proceeding pro se, filed Sworn Affidavits on February 8 and March 1, 2019, (D.E. 138, 145), which the Court construed as Responses to Plaintiff's Motion for Partial Summary Judgment and Statement of Material Facts in support thereof, as well as responsive evidence, (see Order Granting Motion for Reconsideration, D.E. 146). On March 18, 2019, Plaintiff filed a Reply. ("Reply," D.E. 147.) Upon review of the Motion, Responses, Reply, and the record, the Court finds as follows.

---

[1] This case has been automatically stayed as to Defendants Sanabi Investments, LLC and Saady Bijani pursuant to 11 U.S.C. § 362 after those Defendants filed bankruptcy petitions. (D.E. 114, 127.)

I. **Background**

   a. **Relevant facts** [2]

Plaintiff worked for Defendants as a mover on a moving crew from approximately June 2006 until February 10, 2017. (Pl.'s Facts ¶¶ 1, 3.) When a piece of furniture was allegedly damaged, the damages were deducted from Plaintiff's wages. (Id. ¶ 2.) More often than not, the damages or alleged damages were not attributable to Plaintiff's actions. (Id. ¶ 3.)

During the relevant period, Plaintiff witnessed Defendant Saady Bijani ("Bijani") sign blank checks and then provide them to Defendant Hanin Prieto ("Prieto"). (Id. ¶ 4.) Prieto would then fill in the wage amounts and distribute the checks to the employees. (Id.) If something was damaged during a job, Prieto would determine the amount of money to be deducted from the employee's wages, if any. (Id. ¶ 5.)

On a daily basis, Prieto would assign Plaintiff and other movers to specific jobs and trucks. (Id. ¶ 6.) Prieto would regularly call Plaintiff to ask how he was doing with clients, and Plaintiff would overhear clients speaking on the phone with Prieto. (Id. ¶ 7.) If a new employee began working for Defendants, Prieto would call Plaintiff to ask how the new employee was doing. (Id. ¶ 8.)

---

[2] The following facts are gleaned from Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment. ("Pl.'s Facts," D.E. 136.) Although Prieto failed to file a statement of material facts in opposition, the Court will note where Plaintiff's Affidavits appear to dispute Plaintiff's Statement of Facts; otherwise, the facts are undisputed. Given that Prieto speaks limited English and is attempting to defend himself without the benefit of counsel, the Court previously excused his noncompliance with Federal Rule of Civil Procedure 56 and Local Rule 56.1(a). (See Order Granting Motion for Reconsideration, D.E. 146 at 10.)

According to Plaintiff, Prieto had the authority to fire employees. (Id. ¶ 9.) Plaintiff recalls one or two occasions when he personally witnessed Prieto telling an employee that "it was not working out" and that the employee was terminated. (Id. ¶ 10.)

Plaintiff also asserts that Prieto supervised employees, (id. ¶ 11), although Prieto disputes that statement, (D.E. 145 at 1). On a weekly basis, Bijani and Prieto would conduct meetings with all the employees where Prieto would ask about specific employees and discipline any employees that did not have good quality work that week. (Pl.'s Facts ¶ 12.) Prieto would also make employees' schedules and assign Plaintiff and his co-workers to their respective groups. (Id. ¶ 13.)

Prieto states that he began working for Oscar's Moving and Storage four years ago as an "assistant," (D.E. 138 ¶ 2), but he no longer works there, (id. ¶ 3). He further states that he was not the corporate Defendant's registered agent, and has never "employed or supervised anyone[.]" (D.E. 145 at 1.) He appears to state that he is willing to provide his tax documents and bank statements to show that he did not earn what a supervisor/employer would earn. (D.E. 138 ¶ 4.)

b. **Relevant procedural history**

On February 16, 2017, Plaintiff filed a Complaint seeking unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-216. (D.E. 1.) Therein, he alleges that Prieto "is a corporate officer and/or owner and/or manager of the Defendant Corporation who ran the day-to-day operations of the Corporate Defendant for the relevant time period and was responsible for paying Plaintiff's wages for the relevant time period

and controlled Plaintiff's work and schedule and was therefore Plaintiff's employer as defined by 29 U.S.C. 203(d)." (Id. ¶ 5.)

On January 11, 2019, Plaintiff filed the instant Motion seeking summary judgment that Prieto was Plaintiff's individual "employer" as a matter of law. (D.E. 135.) Prieto failed to respond to the Motion. On January 29, 2019, the Court entered an Order Granting Plaintiff's Motion for Partial Summary Judgment, finding that the undisputed facts established that "Prieto had operational control over Sanabi Investments such that he is jointly and severally liable as Plaintiff's individual employer for unpaid overtime wages, if any." (D.E. 137 at 9 (citations omitted).)

On February 8, 2019, Prieto filed his first Affidavit, asserting that he never received Plaintiff's Motion, and requesting that the Court reconsider its Order. (D.E. 138.) The Court construed this Affidavit as a Motion for Reconsideration and established response and reply deadlines. (D.E. 140.) On February 18, 2019, Plaintiff filed a response opposing reconsideration. (D.E. 142.) On March 1, 2019, Prieto filed his second Affidavit, which the Court construed as a Reply brief. (D.E. 145.)

On March 12, 2019, the Court entered an Order Granting Prieto's Motion for Reconsideration pursuant to Rule 60(b)(6). (D.E. 146.) The Court observed that Prieto's Affidavits "may controvert Plaintiff's Statement of Material Facts; at a minimum, the Affidavits state a disagreement with those facts." (Id. at 10.) As such, "in the interests of justice," the Court vacated its Order granting Plaintiff's Motion for Partial Summary Judgment, construed the Affidavits as Responses to Plaintiff's Motion for Partial Summary Judgment and Statement of Material Facts, and also as responsive evidence, and granted

4

Plaintiff leave to file a Reply.  (Id. at 10-11.)  On March 18, 2019, Plaintiff filed his Reply. (D.E. 147.)

## II.     Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f)(1); see also Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1261 (11th Cir. 2011).  The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted).  The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the

nonmoving party.  Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also Fed. R. Civ. P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

## III.   Discussion

Plaintiff seeks summary judgment only as to whether Prieto was his "employer" for purposes of FLSA liability.[3]  (Mot. at 1.)

---

[3] Accordingly, this Order does not address any other issue, such as whether Plaintiff is a "covered employee" under the FLSA eligible for unpaid overtime wages. See generally Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298-99 (11th Cir. 2011); see also Baker v. Stone Cty., Mo., 41 F. Supp. 2d 965, 978 (W.D. Mo. 1999) (deciding threshold issue

The FLSA requires an employer to pay its employee "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011) (citing 29 U.S.C. § 207(a)). "If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay." Id. (citing 29 U.S.C. § 216(b)).

The FLSA "broadly defines an employer as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting 29 U.S.C. § 203(d)). "Whether an individual falls within this definition 'does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.''" Id. (quoting Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir. 1973)[4] (quoting Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947))). "'[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)). "'Operational control means management of day-to-day business functions such as employee compensation, 'direct responsibility for the supervision' of

---

of whether the defendants were the plaintiffs employers before moving to whether the plaintiffs met the FLSA's definition of "employees").

[4]   In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

employees, or general operations.'" Torres v. Rock & River Food Inc., 244 F. Supp. 3d 1320, 1332 (S.D. Fla. 2016) (quoting Baltzley v. Berkley Grp., Inc., No. 10–61194–CIV, 2010 WL 3505104, at *2 (S.D. Fla. Sept. 3, 2010) (quoting Patel, 803 F.2d at 637-38)).

Although Patel recognized personal liability for corporate officers, it "did not purport to limit personal liability to officers, and the Act's broad definition of 'employer' does not admit of such a limitation." Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1310 (11th Cir. 2013). Indeed, as a general matter, "non-officers may be held personally liable under FLSA." Id. at 1313. In clarifying "the degree and type of operational control that will support individual liability under FLSA," id., the Eleventh Circuit explained in Lamonica that "[a] supervisor's ownership interests in the corporation and control over the corporation's day-to-day functions are relevant to [whether the individual is an employer] because they are indicative of the supervisor's role in causing the violation." Id. However, the "primary concern is the supervisor's role in causing the FLSA violation" and "to support individual liability, there must be control over 'significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee.'" Id. at 1314 (quoting Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008)).

In the Eleventh Circuit, courts look to the "economic reality" of the situation to determine whether an individual is an employer for purposes of the FLSA. The economic reality test looks to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

8

employment records." Villareal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997) (quoting Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983)); see also Powell v. Carey Int'l, Inc., 483 F. Supp. 2d 1168, 1183 (S.D. Fla. 2007). "[N]o single factor is dispositive. 'Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive.'" Santos v. Cuba Tropical, Inc., 829 F. Supp. 2d 1304, 1314-15 (S.D. Fla. 2011) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)).

Here, the undisputed facts establish that Prieto had control over the amount of wages Plaintiff received, including how much was deducted from Plaintiff's paycheck for alleged damage to furniture. (Pl.'s Facts ¶¶ 5, 7.) Plaintiff's Declaration states that Bijani would sign blank checks, give them to Prieto, and then Prieto "would then fill in the necessary information related to wages and hand out the checks to the various other employees." (Pl.'s Decl. ¶ 6; see also Polanco Dep. at 16:18 ("[T]he check was distributed by Haneen [sic] to every worker.") "If something was damaged on a job, Hanin Prieto would regularly determine the amount of money to be deducted from the employee's wages, if any." (Pl.'s Decl. ¶ 7.)

However, the facts are disputed as to whether Prieto (1) had the authority to hire and fire employees, and (2) supervised employees. Plaintiff avers that he personally witnessed Prieto firing one or two employees. (Pl.'s Decl. ¶ 11.) Additionally, Hubert Polanco, one of Plaintiff's co-workers, testified during a deposition that Prieto was "[e]verybody's" supervisor and the warehouse supervisor. (Polanco Dep., D.E. 136-1 at 4:19-20.) Prieto made the employees' schedules and assigned them to groups. (Pl.'s Decl.

9

¶ 13.)  "On a daily basis," Prieto assigned Plaintiff and other employees to specific jobs and moving trucks.  (Pl.'s Decl. ¶ 7.)  Prieto also regularly called Plaintiff on the telephone to see how he was doing with clients and then spoke with the clients on the telephone after speaking with Plaintiff.  (Id. ¶ 9.)  If a new employee began working at the company, Prieto would ask Plaintiff to provide him with a status update on the new employee.  (Id. ¶ 10.)  Furthermore, Prieto and Defendant Bijani would conduct weekly meetings during which Prieto would "discipline any employees that did not have good quality work that week."  (Id. ¶ 12.)

Prieto, on the other hand, asserts that he "never . . . employed or supervised anyone[,]" and that Plaintiff "knows I was not [his] employer."  (D.E. 145 at 1.)  He states that he worked 40 hours a week, just like everyone else, (id.), and he appears to assert that he was not paid a supervisor's wages and is willing to produce tax and bank records to prove it, (see D.E. 138 ¶ 4).

Plaintiff argues that: (1) although Prieto "denies that he ever employed or supervised anyone, a mere denial of an allegation is insufficient and does not bring forward significant probative evidence demonstrating the existence of a triable issue of fact[,]" (Reply ¶ 9 (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993); Union Planters Nat'l Leasing, Inc. v. Woods, 687 F.2d 117, 119 (5th Cir. 1982)); (2)  Prieto's tax and bank records are not part of the record and, therefore, are "not competent summary judgment evidence capable of demonstrating the existence of a triable issue of fact[,]" (id. ¶ 10 (citing Borden & Assocs., Inc. v. Markovitz, CASE NO.: 14-CV-81489-KAM, 2015 WL 12516640, at *5 (S.D. Fla. July 20, 2015); S.D. Fla. L.R. 56.1(a)(2))); (3)  even if the tax

and bank records were in evidence, "the amount earned by an employer is not one of the elements to be considered in determining whether Prieto was Plaintiff's employer under the economic reality of their employment relationship[,]" (id. ¶ 11 (citing Lamonica, 711 F.3d at 1314; Villareal, 113 F.3d at 205)); and (4) whether an individual was the registered agent of a company is not one of the factors to be considered when determining individual employer status under the FLSA (and was not part of the basis of Plaintiff's Motion), (id. ¶ 12). Plaintiff argues that "[w]hat Prieto's Affidavits lack is evidence, particularly significant probative evidence, to contradict any of the . . . previously established facts that support a finding that he was Plaintiff's individual employer under the FLSA[.]" (Id. ¶ 13.)

"[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (citing Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."); Price v. Time Inc., 416 F.3d 1327, 1345 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."), modified on other grounds on denial of reh'g, 425 F.3d 1292 (11th Cir. 2005)). However, "[a]n affidavit cannot be conclusory[.]" Id. (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

The Court finds that Prieto's statement that he never supervised or employed anyone, and that Plaintiff knew Prieto was not his employer, is not conclusory. See Stein, 881 F.3d at 857 (citing Feliciano, 707 F.3d at 1253); Price, 416 F.3d at 1345. The Court

11

further finds that when construed liberally, this statement supports a finding that Prieto never hired, fired, or supervised anyone, and establishes a genuine issue of material fact as to whether Prieto was Plaintiff's employer for purposes of the FLSA. See Martinez v. Asian 328, LLC, Case No. 15-cv-1071 (GMH), 2016 WL 4621068, at *5 (D.D.C. Sept. 6, 2016) (denying summary judgment because a reasonable jury viewing the evidence in the light most favorable to the defendants could conclude that the individual defendant was not the plaintiffs' employer); Berrezueta v. Royal Crown Pastry Shop, Inc., 2014 WL 3734489, at *11 (E.D.N.Y. July 28, 2014) (finding a genuine issue of material fact as to whether individual defendant was the plaintiff's employer under the FLSA where the individual defendant's affidavit and deposition testimony refuted some of the plaintiff's evidence on supervisory authority); Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010) (finding genuine issue of material fact precluded summary judgment on issue of whether individual defendant was the plaintiffs' employer where evidence only "potentially indicate[d]" that the defendant had functional control over the plaintiffs).

## IV.   Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of April, 2019.

                                                                  **JOAN A. LENARD**
                                                                  **UNITED STATES DISTRICT JUDGE**